# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | |
|---|---|
| SARIAH MOODY, <br> GRACE READING, <br> and <br> EMILY CADY <br>     Plaintiffs, <br><br> v. <br><br> CITY OF KANSAS CITY, MISSOURI, <br><br>     Defendant. | ) <br> ) <br> ) <br> )   Case No. 4:20-CV-526 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## DEFENDANT CITY OF KANSAS CITY, MISSOURI'S SUGGESTIONS IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND LACK OF SUBJECT MATTER JURISDICTION

Bret R. Kassen, MO #58967
Tara M. Kelly, MO #64624
Laura Dold, MO #57769
Emily Carney, MO #71827
Galen P. Beaufort, Mo #26498
OFFICE OF THE CITY ATTORNEY
2300 City Hall, 414 E. 12th Street
Kansas City, Missouri 64106
Telephone: (816) 513-3142
Facsimile: (816) 513-3133
Tara.Kelly@kcmo.org
Laura.Dold@kcmo.org
Bret.Kassen@kcmo.org
Emily.Carney@kcmo.org
Galen.Beaufort@kcmo.org

*Attorneys for Defendant City of Kansas City, Missouri*

# TABLE OF CONTENTS

**Table of Contents** ..................................................................................................................i

**Table of Authorities** ...............................................................................................................ii

**Introduction** .............................................................................................................................2

**Legal Standard** ........................................................................................................................4

**Argument and Authorities** ....................................................................................................5

    I.    Because the Eight Circuit, in *Weed* and *McDermott*, foreclosed as applied and facial challenges to laws with parallel terms, and under analogous facts, Plaintiffs fail to state a plausible constitutional challenge to Kansas City Code §§ 50-44 (a) and 70-73.........................................................................................................................................5

    II.    Plaintiff's requests for injunctive relief separately fail for lack of standing, where any present injury lacks causation and redressability. ..............................................10

**Conclusion** ............................................................................................................................14

**Certificate of Service**..........................................................................................................15

# TABLE OF AUTHORITIES

## Cases

*ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954 (8th Cir. 2011) ............................ 5

*Ashanti v. City of Golden Valley*, 666 F.3d 1148 (8th Cir. 2012) ................................................. 12

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ........................................................................................ 4, 5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................... 4

*Cameron v. Johnson*, 390 U.S. 611 (1968) ...................................................................................... 7

*Carlsen v. GameStop, Inc.*, 833 F.3d 903 (8th Cir. 2016) ................................................................ 5

*City of Bowling Green v. Pilliard*, 751 S.W.2d 413, (Mo. App. 1988) ........................................... 9

*City of St. Louis v. Jones*, 536 S.W.3d 794 (Mo. App. 2018) .......................................................... 9

*Cox v. Louisiana*, 379 U.S. 559 (1965) ............................................................................................ 7

*Fair v. City of Galveston,* 915 F. Supp. 873 (S.D. Tex.) ................................................................. 7

*Harmon v. City of Kansas City, Mo.*, 197 F.3d 321 (8th Cir. 1999) .............................................. 11

*Hasenyager. v. Board of Police Commissi1rs of Kansas City*, 606 S.W.2d 468
   (Mo. App. 1980) ......................................................................................................................... 13

*Hill v. State*, 88 S.W.3d 527 (Mo. App. 2002) ................................................................................ 9

*Illig v. Union Elec. Co.*, 652 F.3d 971 (8th Cir. 2011) .................................................................. 12

*Lawrence v. 48th Dist. Court,* 560 F.3d 475 (6th Cir.2009) ............................................................ 7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................... 2, 11, 13, 14

*Mader v. United States*, 654 F.3d 794 (8th Cir. 2011) .................................................................... 6

*McCarthy v. Ozark Sch. Dist.,* 359 F.3d 1029 (8th Cir.2004) ....................................................... 11

*McDermott v. Royal*, 613 F.3d 1192 (8th Cir. 2010) ........................................... 1, 5, 6, 7, 8, 9, 10

*Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789 (8th Cir. 2016) ............................ 12

*Osborn v. United States*, 918 F.2d 724 (8th Cir. 1990) .................................................................. 5

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ........................................................................... 1, 11, 13

*Payne v. Pauley,* 337 F.3d 767 (7th Cir.2003) ............................................................................... 7

*Phelps-Roper v. City of Manchester, Mo.*, 697 F.3d 678 (8th Cir. 2012) .................................... 11

*Reprod. Health Servs. of Planned Parenthood of the St. Louis Region, Inc. v. Nixon*,

   185 S.W.3d 685 (Mo. banc 2006) ............................................................................................. 9

*Smith v. Kansas City, Missouri Police Dept.,* 586 F.3d 576 (8th Cir. 2009) ................................ 13

*Staley v. Jones*, 239 F.3d 769 (6th Cir. 2001) ................................................................................ 9

*State ex rel. Scott v. Berberian*, 284 A.2d 590 (R.I. 1971) ............................................................ 7

*State v. Krawsky*, 426 N.W.2d 875 (Minn. 1988) .......................................................................... 8

*State v. Self*, 155 S.W.3d 756 (Mo. 2005) ...................................................................................... 9

*State v. Smith*, 759 P.2d 372 (Wash. banc 1988) ........................................................................... 7

*State v. Williams*, 534 A.2d 230 (Conn. 1987) .............................................................................. 8

*Summers v. Earth Island Institute*, 555 U.S. 488 (2009) .............................................................. 11

*Weed v. Jenkins*, 873 F.3d 1023 (8th Cir. 2017) ........................................................... 1, 5, 6, 7, 10

*Williams v. City of Kansas City*, 841 S.W.2d 193 (Mo. App. 1992) ........................................... 13

*Wilson v. Kittoe,* 337 F.3d 392 (4th Cir. 2003) .............................................................................. 8

**Statutes**

42 U.S.C. § 1983 ............................................................................................................................ 13

42 U.S.C. § 1988 .............................................................................................................................. 4

RSMo. § 43.170 ........................................................................................................................... 6, 8

RSMo. § 84.420 ............................................................................................................................ 13

RSMo. § 84.430 ............................................................................................................................ 13

RSMo. § 84.460 ................................................................................................................................. 13

RSMo. § 562.021 ............................................................................................................................... 9

RSMo. § 562.026 ............................................................................................................................... 9

**Rules**

Rule 12(b)(1) ................................................................................................................................ 1, 5

Rule 12(b)(6) ............................................................................................................................ 1, 4, 5

| | |
|---|---|
| Sariah Moody, <br> Grace Reading, and <br> Emily Cady <br><br> Plaintiffs, <br> v. <br><br> City of Kansas City, Missouri, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) Case No. 4:20-CV-526-HFS <br> ) <br> ) <br> ) <br> ) <br> ) |

**DEFENDANT CITY OF KANSAS CITY, MISSOURI'S SUGGESTIONS IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND LACK OF SUBJECT MATTER JURISDICTION**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs' claims against City should be dismissed, because (1) the Eighth Circuit has rejected as applied and facial challenges to parallel laws prohibiting non-expressive conduct toward an officer who, as here, is in the "discharge of his/her official duties" (Kansas City Code § 50-44(a)) or giving a "lawful order" (Kansas City Code § 70-73) (*see e.g., Weed v. Jenkins*, 873 F.3d 1023, 1029–30 (8th Cir. 2017) (upholding statute prohibiting "resist[ance] or oppos[ition]" to member of the Missouri highway patrol "in the proper discharge of his duties"); *McDermott v. Royal*, 613 F.3d 1192, 1193 (8th Cir. 2010) (upholding statute prohibiting "resist[ance] or obstruct[ion to] a city officer making an arrest or serving any legal writ, warrant or process or executing or attempting to execute any other duty imposed upon him by law"); and (2) Plaintiffs' requests for injunctive relief also fail on the separate basis that they lack causation and redressability elements for Article III standing, in that the only "continuing, present adverse effects," *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974), allegedly suffered were the result of independent acts of third parties (*i.e.*, officers of the Kansas City Police Department, "KCPD"), managed by a separate entity, the Board of Police

1

Commissioners, "Board"), and, thus, are neither "fairly traceable" to City's conduct nor "likely. . . redressed by a favorable decision," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992), in this action where neither those officers nor the Board appears.

## **INTRODUCTION**

Plaintiffs Sariah Moody ("Moody") and Emily Cady ("Cady") allege that they were arrested under City Code Section 70-73. Doc. 1, ¶¶ 38, 96. Plaintiffs allege that Section 70-73 reads:

> No person shall willfully fail or refuse to comply with any lawful order or direction of any police officer, parking control officer, firefighter or uniformed adult school crossing guard with authority to direct, control or regulate traffic.

Doc. 1, ¶ 14. Moody states that, while attending a May 31, 2020 protest and sitting or kneeling "very close to the curb. . .near the crosswalk of J.C. Nichols Parkway at Emanuel Cleaver II Boulevard[,]. . .shadowy figures advance[ed] towards her[,] . . .shouting 'move, move!'" Doc. 1, ¶¶ 23, 29. While Moody was "still seated on the ground, . . .two officers picked her up off the ground, and she was then surrounded by six other officers[, who] . . .asked her if she was going to move, and she said, 'No[,]'" before officers then arrested her. Doc. 1, ¶¶ 30-31, 33.

Cady alleges that she engaged in a marching protest on June 1, 2020 that ranged from the Plaza, north on Main Street to 31st Street, returning south to Linwood Boulevard, west on Linwood to Broadway, north on Broadway to 31st Street, south on Pennsylvania Avenue to 39th Street, and east on 39th Street toward Washington Street. Doc. 1, ¶¶ 69-88. While marching along this route, Cady alleges that she and the marching protesters encountered police officers, who, at various times, "blocked" the marchers, ordered them to move in another direction, told them "that they could not have access to the highway," and "advance[d] toward the protesters." Doc. 1, ¶¶ 72, 73,

2

77, 81-83, 85-86. On the sidewalk on the south side of 39th Street, while walking east toward Washington Street, Cady alleges that she and other protesters were "surrounded by shouting police officers[, who]. . .ordered all the protesters to get on the ground[,]" to which Cady "initially said 'no[,]'" and was subsequently arrested. Doc. 1, ¶¶ 87-96.

Plaintiff Grace Reading ("Reading") alleges that she was arrested under City Code Section 50-44(a). Doc. 1, ¶ 65. Plaintiffs allege that Section 50-44(s) reads:

> Any person who shall in any way or manner hinder, obstruct, molest, resist or otherwise interfere with any city public safety officer,. . .or any officer of the city police department or any member of any other law enforcement agency or police force, in the discharge of his/her official duties shall be guilty of an ordinance violation."

Doc. 1, ¶ 13. Reading alleges that, on June 2, 2020, she was at the Plaza, "standing with other protesters at the yellow painted traffic line on the closed J.C. Nichols Parkway," when police officers, who had "lined up in rows in front of Rye Plaza on J.C. Nichols Parkway[,]. . .began to order the protesters to 'step back.'" Doc. 1, ¶¶ 43, 49-51. Reading states that, despite this order, she and her friend "decided to stand with. . .other protesters, and refused to move out of the street. Doc. 1, ¶¶ 52-53. "As the police approached, Reading locked arms with her friend[,]" before the police arrested Reading and her friend. Doc. 1, ¶¶ 52-55.

Plaintiffs allege that they have foregone subsequent protests and are now "fearful," "anxious," and/or "afraid" to protest because of the conduct they experienced from police. Doc. 1, pp. ¶¶ 41, 67, 98. Plaintiffs do not allege any current criminal prosecution or consequences, following Moody's arrest and release on bond (¶¶ 36-40), and Reading's and Cady's respective arrests, releases on bond, and charges (¶¶ 58-65 and 94-97). In their prayer, Plaintiffs request the following relief:

3

> A. Grant a preliminary injunction upon motion and a permanent injunction preventing enforcement of the Failure-to-Obey Ordinances;
>
> B. Enter a declaration that the Failure-to-Obey Ordinances are unconstitutional on their face and as applied to Plaintiffs;
>
> C. Award Plaintiffs costs and reasonable attorney fees pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law; and
>
> D. Allow such other and further relief as this Court finds just and proper under the circumstances.

Doc. 1, p. 17.

## **LEGAL STANDARD**

The Court is familiar with the legal standard under Rule 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The standard does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citation omitted). The United States Supreme Court announced a two-step inquiry when deciding a motion under Rule 12(b)(6).

First, "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679. Indeed, the Court need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678. A complaint with "'naked assertion[s]' devoid of 'further factual enhancement' is not sufficient." *Id. (quoting Twombly,* 550 U.S. at 557).

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Allegations must have "facial plausibility . . . that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A plausible claim requires "more than a sheer possibility that the defendants acted unlawfully." *Id.* Identifying a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

In addressing a Rule 12(b)(1) challenge, "[t]he existence of subject-matter jurisdiction is a question of law that this court reviews de novo." *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011). In a facial attack, such as City brings here, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (citing *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)).

## ARGUMENT AND AUTHORITIES

I. **Because the Eighth Circuit, in *Weed* and *McDermott*, foreclosed as applied and facial challenges to laws with parallel terms, and under analogous facts, Plaintiffs fail to state a plausible constitutional challenge to Kansas City Code §§ 50-44(a) and 70-73.**

Plaintiffs' target the City as a lawmaker in its enactment of Sections 50-44(a) and 70-73, claiming that the ordinances are unconstitutional as applied and on their face. However, Plaintiffs fail to state a plausible right to such relief, where the Eighth Circuit has twice recently rejected First Amendment challenges to nearly identical Missouri laws. *See Weed v. Jenkins*, 873 F.3d 1023, 1028 (8th Cir. 2017); *McDermott v. Royal*, 613 F.3d 1192, 1193 (8th Cir. 2010). Because the Eighth Circuit found no constitutional infirmities with the laws under which the plaintiffs in *Weed* and *McDermott* were arrested, and the conduct prohibited in such laws parallels Sections

5

50-44(a) and 70-73, and under analogous facts, Plaintiffs claims fail as a matter of law.

In *Weed*, the Eighth Circuit rejected as applied and facial overbreadth and vagueness challenges from a protester arrested for refusing to leave an overpass after an order to do so by the Missouri Highway Patrol. 873 F.3d at 1027, 1029-30. The patrol member arrested Weed pursuant to a statute that prohibited "'willfully resist[ing] or oppos[ing] a member of the patrol in the proper discharge of his duties." *Id.* at 1028 (citing RSMo. § 43.170). The *Weed* court noted that the statute's terms "parallel" those from an ordinance found facially constitutional in another case, *McDermott*. *Id*. at 1029 (noting that "[t]he 'resist or obstruct' terms in *McDermott* parallel the 'resists or opposes' terms in § 43.170 RSMo." (citing *McDermott v. Royal*, 613 F.3d 1192, 1194 (8th Cir. 2010)). Thus, upon stating that "[i]t is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel[,]'" the *Weed* court held that "Section 43.170 RSMo is not overbroad." *Id*. at 1029 (citing *Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (*en banc*)). The Eighth Circuit also observed that the statute "applies only after an individual fails to comply with a trooper's 'proper' order—that is, one issued under *another* law." *Id*. at 1028 (emphasis in original). Therefore, in rejecting Weed's as applied challenge, the court observed that the statute authorizing the arrest could not have posed "any restraint on Weed's speech[.]". *Id.* at 1029. If there were any such restraint, the Eighth Circuit noted, then it might have arisen from a separate ordinance under which Jenkins believed he had the initial authority to order Weed off of the overpass,[1] but "not from § 43.170 RSMo, the statute authorizing the arrest." *Id*. at 1029-30. Finally, following the Supreme Court's holding in *Cameron* that "obstruct" and "unreasonably interfere" were not unconstitutionally vague, the Eighth Circuit held the same for Section 43.170

---

[1] The constitutionality of this other ordinance, under which Jenkins presumed to have authority to order Weed off of the overpass, was not under review in *Weed*.

because its terms "willfully resists or opposes" are, "[l]ike 'obstruct or unreasonably interfere[,]' . . . 'words of common understanding.'" *Id*. at 1030 (citing *Cameron v. Johnson*, 390 U.S. 611, 615-16 (1968) (rejecting a facial vagueness challenge to a statute forbidding "picketing ... in such a manner as to obstruct or unreasonably interfere with free ingress or egress to and from ... any county courthouses....[,]" because such terms are not unconstitutionally vague, "plainly require no guessing at their meaning" and are "words of common understanding)).[2]

Similarly, in *McDermott*, reviewing an ordinance with "parallel" terms to the statute in *Weed*, the Eighth Circuit also rejected a facial challenge and upheld an ordinance that read, "No person shall resist or obstruct a city officer making an arrest ... or executing or attempting to execute any other duty imposed upon him by law." *McDermott*, 613 F.3d at 1194. Under the First Amendment, McDermott challenged the facial constitutionality of the ordinance under which she was arrested "for obstructing police officers who arrested her son." *Id*. at 1193. Citing a number of circuit courts reviewing identical or synonymous terms, the Eighth Circuit reversed the district court's ruling that the ordinance was facially unconstitutional, and concluded that "obstruct" and "resist"[] cover only physical acts or fighting words and do not give officers unfettered discretion to make arrests for mere words that annoy them." *Id* at 1193-94.[3] *McDermott*'s rejection of an

---

[2] *See also Cox v. Louisiana*, 379 U.S. 559, 560 (1965) (considering the phrase "in the discharge of his duty," nearly identical to that in Section 50-44(a) and Weed, the court neither addressed the phrase as part of its vagueness analysis, nor invalidated the law on vagueness); *State ex rel. Scott v. Berberian*, 284 A.2d 590, 593 (R.I. 1971). (where statute stated "no person shall willfully fail or refuse to comply with any lawful order or direction of any police officer invested by law with authority to direct, control, or regulate traffic[,]" holding that the statute stated the prohibited conduct with reasonable specificity in a way that a "man of common understanding can ascertain therefrom what he may and may not do"); *State v. Smith*, 759 P.2d 372, 375 (Wash. banc 1988) (finding that the term "lawful" is something that a person of common understanding can comprehend and as such, the concept of "lawfulness" is not "inherently unconstitutionally vague").

[3] The *McDermott* Court relied on *Fair v. City of Galveston,* 915 F. Supp. 873, 879–80 (S.D. Tex.), *aff'd,* 100 F.3d 953 (5th Cir.1996) (affirming the rejection of an overbreadth challenge to an ordinance making it unlawful to "obstruct, prevent or interfere with" an officer's lawful discharge of his duties), *Lawrence v. 48th Dist. Court,* 560 F.3d 475, 482 (6th Cir.2009) (upholding ordinance prohibiting "resist[ing,]. . . interfer[ing] with or hinder[ing]" a police officer, as it suggested physical interference, not speech), *Payne v. Pauley,* 337 F.3d 767, 776 (7th Cir.2003) (noting that Illinois courts interpreted a state law making it unlawful to knowingly "resist" or "obstruct" the

overbreadth claim to a law with parallel terms is consistent with other authorities.[4]

In the face of *McDermott* and *Weed*, and the cited authorities on which those courts relied, Plaintiffs cannot state a plausible constitutional challenge to the ordinances here. Indeed, the terms in the laws found constitutional in *Weed* and *McDermott* parallel those in Sections 50-44(a) and 70-73, both as to their non-expressive verbs and descriptions of officer authority, as illustrated by the following table:

| Statute/Ordinance | Prohibited conduct | Official to whom conduct is directed | Holding |
| --- | --- | --- | --- |
| RSMo. § 43.170 (from *Weed*) | "'willfully resist[ing] or oppos[ing]" | "a member of the patrol in the proper discharge of his duties." | Constitutional: as applied (to arrest of protester who did not follow patrol member's instruction) and, on its face, neither overbroad nor vague |
| Ordinance 26-17 (from *McDermott*) | "resist[ing] or obstruct[ing]" | "officer making an arrest or serving any legal writ, warrant or process or executing or attempting to execute any other | Constitutional: on its face, not overbroad[5] |

---

performance of a police officer, the same terms used in the challenged Ordinance, to cover only physical resistance), and *Wilson v. Kittoe,* 337 F.3d 392, 398-99 and n.3 (4th Cir. 2003) (noting that Virginia courts interpreted a state obstruction-of-justice statute—using only the terms "obstructs" or "obstruction"—as not reaching peaceful verbal criticism, and declining to address whether statute might run afoul of First Amendment because of how state courts had construed the statute).

[4] *See e.g., State v. Williams*, 534 A.2d 230, 236, 238 (Conn. 1987) (finding that a statute reading, "A person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer or fireman in the performance of his duties[,]" was not facially overbroad because "a reasonable interpretation of the statute confines its scope to conduct that amounts to meddling in or hampering the activities of the police in the performance of their duties. . . . Furthermore, the conduct that the statute proscribes is limited to action . . . ." and, thus, the statute was not "so open-ended that it lends itself to arbitrary enforcement"); *State v. Krawsky*, 426 N.W.2d 875, 876-77 (Minn. 1988) (statute making it a misdemeanor to "interfere with a peace office while the officer is engaged in the performance of his official duties" was not overly broad, because it "is directed at a particular kind of physical act, namely, physically obstructing or interfering with an officer"). The Eighth Circuit has expressly endorsed Krawsky on a number of occasions, including in *McDermott*. Thus, based on these additional authorities, Plaintiffs do not demonstrate a plausible right to relief on their facial overbreadth challenge.

[5] At trial, the jury found for the City of Springfield on an as applied challenge to the ordinance, which was not an issue on appeal. *McDermott*, 613 F.3d at 1193.

8

| | | duty imposed upon him by law." | |
|---|---|---|---|
| City Code Section 50-44(a) | "hinder[ing], obstruct[ing], molest[ing], resist[ing] or otherwise interfer[ing] with" | "[one of the named officials] in the discharge of his/her official duties" | — |
| City Code Section 70-73 | "refus[ing] to comply with" | "any lawful order or direction of any police officer. . . with authority to direct, control or regulate traffic" | — |

*Weed* and *McDermott* demonstrate that conduct verbs synonymous with those in Sections 50-44(a) and 70-73 are constitutional under the First Amendment, even as applied in the arrest of a protester (as in *Weed*). [6] The same is true with respect to the description of officer authority in the

---

[6] Plaintiffs allege that 50-44(a) was vague because it lacked a scienter requirement (Doc. 1, ¶ 112), and it is true that 50-44(a) does not independently state a scienter requirement. However, that does not render it unconstitutional, especially where the Eighth Circuit in *McDermott* held an ordinance constitutional with parallel terms to Section 50-44(a) that also lacked an independent scienter requirement. 613 F.3d at 1193-94. Indeed, this does not render a statute per se vague. *Staley v. Jones*, 239 F.3d 769, 791 (6th Cir. 2001). It is a settled question of state law that, where a statute lacks a stated *mens rea* requirement, the courts should import "purposefully or knowingly" in accordance with RSMo. § 562.021.3. *State v. Self*, 155 S.W.3d 756, 762 (Mo. 2005) ("A culpable mental state will be imputed to each statutory element, unless its imputation would be inconsistent with the purpose of the statute or 'lead to an absurd or unjust result.'" (quoting RSMo. § 562.026.2)); *Hill v. State*, 88 S.W.3d 527, 530 (Mo. App. 2002) (importing "purposefully or knowingly" as the proper scienter requirement). This imputed scienter applies equally to statutes and city ordinances. *See City of St. Louis v. Jones*, 536 S.W.3d 794, 798 (Mo. App. 2018) ("Section 562.021.3 applies equally to offenses that are either violations of state statute or municipal ordinance violations."). *See also City of Bowling Green v. Pilliard*, 751 S.W.2d 413, (Mo. App. 1988) (holding that the imputed mental states from § 562.021 "also appl[y] to a violation of the City of Bowling Green ordinance"). In fact, "[l]egislative intent not to require a culpable mental state for each element of the crime must be *clearly apparent* before a particular statute will be construed not to require proof of such culpability." *Self*, 155 S.W.3d at 762. As there is no clearly apparent legislative intent to *not* include a culpable mental state in 50-44(a), "purposefully or knowingly" is imported into 50-44(a), thereby giving 50-44(a) a scienter requirement.

That precise conclusion was reached by the Eastern District Court of Appeals in *City of St. Louis v. Jones*. In *Jones*, the Eastern District was considering a St. Louis ordinance making a misdemeanor for "[w]hoever . . . shall hinder, obstruct, resist or otherwise interfere with any City officer in the discharge of his official duties . . . ." 536 S.W.3d at 798. Although the Eastern District recognized that this ordinance – with verbs precisely mirroring 50-44(a)'s list of prohibitions minus "molest" – did "not expressly require proof of any culpable mental state," it also recognized that 'Missouri law generally requires a mental state as an element to any crime.'" *Id.* (quoting *Reprod. Health Servs. of Planned Parenthood of the St. Louis Region, Inc. v. Nixon*, 185 S.W.3d 685, 690 (Mo. banc 2006)). Quoting to RSMo. § 562.021.3 which imports the "purposely or knowingly" scienter, the Eastern District held that it "must impute a mental state of 'purposely or knowingly,' pursuant to Section 562.021.3." *Id.* Nor would a *mens rea*

9

ordinances, where such descriptions ("in the discharge of his/her official duties," 50-44(a), and "any lawful order or direction of any police officer," 70-73) parallel those the Eighth Circuit deemed constitutional in *Weed* ("a member. . .in the proper discharge of his duties") and *McDermott* ("officer. . .executing or attempting to execute any other duty imposed upon him by law"). What is more, the *Weed* court specifically held that any question concerning the propriety of or authority for the officer's underlying order (prompting the refusal and arrest under the *Weed* statute that parallels City's ordinances) has no bearing on the constitutionality of the law used to arrest, which posed no restraint on Weed's speech. 873 F.3d at 1029-30. Likewise, here, the constitutionality of the City's challenged ordinances in no way depends on the existence of constitutional authority for the officers' orders to the Plaintiffs or whether officers properly applied that authority. In other words, even assuming *arguendo* that the officers lacked independent authority to issue the orders issued to Plaintiffs, it is not unconstitutional for a lawmaker, like City, to merely pass ordinances that (like the constitutional laws using parallel terms in *Weed* and *McDermott*) criminalize non-expressive conduct toward an officer in the "discharge of his/her official duties" (50-44(a)) or giving a "lawful order" (70-73).

Accordingly, just as the *Weed* court followed the "cardinal rule. . .[that it] is bound by the decision of a prior panel" (*i.e., McDermott*) on an identical challenge to a law with "parallel" terms, this Court should apply *Weed* and *McDermott* to the "parallel" City ordinances, and dismiss Plaintiffs' claims with prejudice. *See Weed*, 873 F.3d at 1029.

### II. Plaintiff's requests for injunctive relief separately fail for lack of standing, where any present injury lacks causation and redressability.

To establish standing, according to the United States Supreme Court:

---

element have assisted these Plaintiffs, each of whom knowingly, purposefully, willfully – whichever scienter is used – chose not to follow officers' orders.

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations omitted). Plaintiffs "bear[] the burden of showing that [they] ha[ve] standing for each type of relief sought." *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009). "Mootness is akin to the doctrine of standing because the 'requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Phelps-Roper v. City of Manchester, Mo.*, 697 F.3d 678, 687 (8th Cir. 2012) (*en banc*) (citing *McCarthy v. Ozark Sch. Dist.,* 359 F.3d 1029, 1035 (8th Cir.2004)). In determining whether standing exists (*i.e*., "an actual case or controversy"), the United States Supreme Court has held that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 94 S. Ct. 669, 676, 414 U.S. 488, 495–96 (1974); *see also Harmon v. City of Kansas City, Mo.*, 197 F.3d 321, 327 (8th Cir. 1999) ("The mere fact that injurious activity took place in the past does nothing to convey standing to seek injunctive relief against future constitutional violations."). Here, in addition to the reasons set forth in Section I. supporting dismissal of all claims, Plaintiffs' requests for injunctive relief separately fail for lack of standing, due to the absence of "continuing, present adverse effects" (*O'Shea*, 414 U.S. at 495–96) that are "fairly traceable" to City's conduct and "likely. . redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61.

11

As injunctive relief, Plaintiffs request a "preliminary injunction upon motion and a permanent injunction preventing enforcement of the Failure-to-Obey Ordinances." Doc. 1, p. 17. In their Motion for Preliminary Injunction, Plaintiffs request, more specifically, that City be "enjoined and restrained effective immediately pending the trial of this action and determination, *inter alia*, from unconstitutionally arresting protestors for violation of Kansas City Code §§ 50-44(a) and 70-73[,]" and "from enforcing the ordinances." Doc. 2, pp. 1-2.[7] Plaintiffs do not allege that they face any current criminal prosecution or consequences. Nor do Plaintiffs allege any other present injury that City independently visited upon them. Rather, the only arguably current injury that Plaintiffs allege is that they have foregone subsequent protests and are now "fearful," "anxious," and/or "afraid" to protest *because of the treatment they received from police*. Doc. 1, pp. ¶¶ 41, 67, 98. However, these allegations, whether alone or in combination with any others, fail to demonstrate Plaintiffs' standing for injunctive relief.

City recognizes that, in some circumstances, courts have held that a plaintiff might satisfy the first element of standing, "injury-in-fact," in First Amendment cases by alleging that "self-censorship" was an "objectively reasonable" reaction. *See e.g, Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 794-95 (8th Cir. 2016). However, even if these allegations of Plaintiffs' present emotional condition and non-attendance at protests constitute an injury-in-fact, they still fail to satisfy the second (causation) and third (redressability) elements of standing

---

[7] Even if Plaintiffs' Motion for Preliminary Injunction (Doc. 2) is not deemed "within the pleadings," it is, at the very least, embraced by the pleadings as a matter alleged in the Complaint (Doc. 1, p. 17, seeking a "preliminary injunction upon motion"), and a matter of public record, filed with the Court in this action. Thus, the Court can consider this reference in Plaintiff's Motion, without converting City's motion into one for summary judgment. *See Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (citations omitted) ("In addressing a motion to dismiss, '[t]he court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record.'"); *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (citations omitted) ("Documents necessarily embraced by the pleadings include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.'").

12

for any injunctive relief against the City. Because Plaintiffs allege that their only current injuries were committed by independent, third-party police officers, the causation element for standing is lacking against City.[8] Indeed, nowhere do Plaintiffs allege any "continuing, present adverse effects[,]" *O'Shea*, 414 U.S. at 495–96, that are "fairly ... trace[able] to the challenged action of the [City], and not ... th[e] result [of] the independent action of some third party[, like the Board and officers,] not before the court." *Lujan*, 504 U.S. at 560–61. Thus, the causation element to support standing is lacking, and Plaintiffs' requests for injunctive relief claims should be dismissed.

Similarly, Plaintiffs cannot satisfy the third element for standing (redressability) on their requests for injunctive relief, where Plaintiffs exclude the Board and third-party officers whose acts Plaintiffs cite as the sole source of their present injuries. Here, such present injuries cannot be redressed in an action excluding the officers and the organization that manages them, the Board. The failure of the redressability element is perhaps most apparent when considering Plaintiffs' explicit request for injunctive relief as "preventing enforcement of the Failure-to-Obey Ordinances" and "unconstitutionally arresting protestors for violation of Kansas City Code §§ 50-44(a) and 70-73" and "enforcing the ordinances," Doc. 1, p 17; Doc. 2, pp.. 1-2; see n.7, above. Where the only enforcement of the Ordinances, or arrests pursuant to the Ordinances, alleged in

---

[8] Indeed, the Board of Police Commissioners of Kansas City ("Board") is a separate entity from the City, and is created by state law and given power to control the Kansas City, Missouri Police Department pursuant to RSMo, 84.420, and its control is exclusive. RSMo 84.460, unequivocally states that as soon as this Board held its first meeting, "the whole of the then existing police force . . . shall pass under the exclusive management and control of said board, and be subject to no other control . . . ." The issue was litigated in *Hasenyager, et al. v. Board of Police Commissi1rs of Kansas City, et al.*, 606 S.W.2d 468 (Mo. App. 1980) and the court held that the Kansas City Missouri, Police Department employees were not under the City's control. *See Williams v. City of Kansas City*, 841 S.W.2d 193 (Mo. App. 1992), footnote 2 p. 195. Further, the power to hear "complaints or charges" against any member of the police department is vested solely in the Board. Sec. 84.430.1 RSMo. In numerous actions pursuant to 42 U.S.C. § 1983 and other substantive law, claimants have brought suit in this Court and others against the Board of Police Commissioners and the individual police officers it manages. *See e.g., Smith v. Kansas City, Missouri Police Dept.*, 586 F.3d 576, 578 (8th Cir. 2009).

this action occurred at the hands of KCPD police officers (controlled by the Board), a favorable decision here could not enjoin such conduct against persons who remain third parties to this action. *See Lujan,* 504 U.S. at 560–61 (to establish redressability element for standing, a plaintiff must show that it is "'likely' that the injury will be 'redressed by a favorable decision'"). Accordingly, standing for Plaintiffs' injunctive relief requests is lacking on this separate basis, and those claims should be dismissed.

## **CONCLUSION**

For the foregoing reasons, and pursuant to Rules 12(b)(6) and 12(b)(1), City is entitled to dismissal with prejudice of all claims.

Respectfully submitted,

OFFICE OF THE CITY ATTORNEY

*/s/ Bret R. Kassen*
Bret R. Kassen, MO #58967
Tara M. Kelly, MO #64624
Laura Dold, MO #57769
Emily Carney, MO #71827
Galen P. Beaufort, Mo #26498
OFFICE OF THE CITY ATTORNEY
2300 City Hall, 414 E. 12th Street
Kansas City, Missouri 64106
Telephone: (816) 513-3142
Facsimile: (816) 513-3133
Galen.Beaufort@kcmo.org
Tara.Kelly@kcmo.org
Laura.Dold@kcmo.org
Bret.Kassen@kcmo.org
Emily.Carney@kcmo.org
*Attorneys for Defendant City of Kansas City, Missouri*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via electronic filing on this 22nd day of July, 2020, to all attorneys of record.

       */s/ Bret R. Kassen*
       Bret R. Kassen