IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SARIAH MOODY, ET AL., | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 4:20-CV-526 |
| CITY OF KANSAS CITY, MISSOURI, | ) |
| Defendant. | ) |

**SUGGESTIONS IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

The City argues that Plaintiffs fail to state a claim because similar (or, in their words, "parallel") language in other laws has been considered constitutional (as against different challenges, however) and that Plaintiffs lack standing to challenge the ordinances so the Court lacks subject matter jurisdiction. Neither argument has merit, and the motion should be denied.

**I.      Background**

Plaintiffs were arrested while participating in nonviolent protests in Kansas City, Missouri, and charged with violating Kansas City Code §§ 50-44(a) and 70-73 (collectively the "Failure-to-Obey Ordinances"). (Complaint ¶ 1.) Plaintiff Sariah Moody was arrested for sitting by the curb in a street that was closed to vehicle traffic during a protest. (*Id.* ¶ 32.) Plaintiff Grace Reading was also arrested for standing in a street closed to vehicle traffic while participating in nonviolent protests. (*Id.* ¶¶ 50, 55.) Plaintiff Emily Cady was arrested on a sidewalk, following a protest. (*Id.* ¶ 90.) Plaintiffs have each averred that they are fearful of participating in future protests (i.e., their speech has been chilled) because of the City's enforcement of the Failure-to-Obey Ordinances. (*Id.* ¶¶ 41, 67, 98.)

## II. Legal Standard

The City grounds its motion to dismiss in Fed. R. Civ. P. 12(b)(1), lack of subject matter jurisdiction, and Fed. R. Civ. P. 12(b)(6), failure to state a claim.

Under a facial attack brought pursuant to Rule 12(b)(1), the factual allegations regarding jurisdiction are presumed to be true, and the motion may succeed only if the plaintiff has failed to allege an element necessary for subject matter jurisdiction. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). "Dismissal for lack of subject matter jurisdiction will not be granted lightly." *Wheeler v. St. Louis Sw. Ry. Co.*, 90 F.3d 327, 329 (8th Cir. 1996). "In a facial attack, the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (internal quotation marks omitted).

As to a request for dismissal brought pursuant to Rule 12(b)(6), the Court must also accept as true all factual allegations in the complaint and view them in a light most favorable to the plaintiffs. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

## III. Plaintiffs have stated a claim.

The City relies upon *Weed v. Jenkins*, 873 F.3d 1023 (8th Cir. 2017), and *McDermott v. Royal*, 613 F.3d 1192 (8th Cir. 2010), to argue that the Eighth Circuit has twice upheld "nearly identical Missouri laws." (City Mot. at 5–6.) Putting aside the fact that calling the laws "nearly identical" is quite a stretch, neither case controls here.

In *Weed*, the Missouri State Highway Patrol (MSHP) determined—after five vehicle accidents—that protesters on a highway overpass were distracting drivers. A state trooper

2
CORE/3520307.0002/160846913.3

Case 4:20-cv-00526-HFS   Document 19   Filed 08/05/20   Page 2 of 11

approached the protesters, explained as much, and asked them to leave. Even after warning Plaintiff Weed he would be arrested if he did not leave, Weed refused. The trooper arrested Weed under Mo. Rev. Stat. § 43.170, which prohibits "willfully resist[ing] or oppos[ing] a member of the [highway] patrol in the proper discharge of his duties." *Id.* at 1028.

Weed filed suit against the trooper's supervisor, who had sent the trooper, as well as the MSHP superintendent. He argued that the trooper's order violated the First Amendment and the Due Process Clause. However, affirming the district court's grant of summary judgment against Weed, the Eighth Circuit held it "need not reach the merits of those issues due to the doctrine of qualified immunity." *Id.* at 1028. The court did not decide one way or the other whether the trooper's order was in fact lawful. *Id.* at 1029 ("The doctrine of qualified immunity protects [the supervisor] from First Amendment damages because he had no reason to know, based on preexisting law, that his order was unlawful."). Nothing from the *Weed* court's discussion of qualified immunity applies to this case, which seeks prospective relief only against a municipality. *See Owen v. City of Indep.*, 445 U.S. 622, 638 (1980) (holding that municipalities are not entitled to qualified immunity).

However, Weed also sought a declaratory judgment that the "resists or opposes" language in Mo. Rev. Stat. § 43.170 caused the statute to be facially overbroad. *Id.* at 1029. The court rejected that challenge without much discussion, concluding merely that it was bound by an earlier panel's decision in *McDermott v. Royal*, 613 F.3d 1192 (8th Cir. 2010) (per curiam). *Weed*, 873 F.3d at 1029.[1] Thus, the City's argument that the Failure-to-Obey Ordinances have

---

[1] Eventually, the *Weed* court did discuss (in dicta) the plaintiff's First Amendment and due process challenges. It rejected the First Amendment claim because of a unique relationship between the state statute and a local ordinance that Weed had *not* challenged, and it rejected the void-for-vagueness claim because "willfully resists or opposes"— the only terms Weed took issue with—were words of common understanding. *Id.* at 1030. While the City calls the law at issue parallel to the ordinances in this case, the only common term with this phrase is "willfully" found in § 70-73. The law is not parallel, and *Weed* is not controlling.

3

CORE/3520307.0002/160846913.3

been sanctioned by the Eighth Circuit turns upon whether this case is controlled by *McDermott*. It is not.

In *McDermott*, the plaintiff was arrested and prosecuted for obstructing police officers (in particular, a drug-sniffing dog) as they were arresting her son. 613 F.3d at 1193. The Springfield ordinance under which she was charged provided: "No person shall resist or obstruct a city officer making an arrest . . . or attempting to execute any other duty imposed upon him by law." *Id*. McDermott's pro se First Amendment claim was initially rejected by the trial court at the motion-to-dismiss stage, but the Eighth Circuit reversed—twice. *See McDermott v. Royal*, 213 Fed. App'x 500, 502 (8th Cir. 2007) (per curiam); *McDermott v. Royal*, 123 Fed. App'x 241, 242 (8th Cir. 2004) (per curiam). The *McDermott* decision that the City relies upon was issued not at the motion-to-dismiss stage, but after robust factual development, including a jury trial. 613 F.3d at 1193. At trial, the jury found that McDermott's speech "was not a substantial or motivating factor in her arrest and that she was not arrested for mere speech." *Id.* The district court nonetheless concluded that the ordinance was facially overbroad. Reversing, the Eighth Circuit found that the ordinance was not *facially* overbroad because the terms at issue—"resist or obstruct"—"cover[ed] only physical acts or fighting words and d[id] not give officers unfettered discretion to make arrests for mere words that annoy them." *Id.* at 1194.[2]

---

Plaintiffs' vagueness claim here is different from *Weed* and more like that of *Stahl v. City of St. Louis*, 687 F.3d 1038 (8th Cir. 2012): they do not contend that the Failure-to-Obey Ordinances are "vague in the traditional sense that [their] language is ambiguous." *Id.* at 1041. To the contrary, because of their breadth and dependence on the whim of the officer on the street, and like in *Stahl*, the Failure-to-Obey ordinances do "not provide people with fair notice of when their actions are likely to become unlawful" and instead encourage arbitrary enforcement. *Id.*; *see also Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Moreover, like *Stahl*, here the Plaintiffs are challenging the ordinance itself while in *Weed* the plaintiff's case challenged the officer's conduct, not the underlying ordinance. It is also worth noting the striking difference in the underlying facts in *Weed* where protesters were distracting traffic on an overpass. Here, Plaintiffs were arrested on closed streets and a public sidewalk.

[2] Springfield appealed following the district-court proceedings. McDermott did not. So only the facial overbreadth claim was before the Eighth Circuit in the 2010 *McDermott* case.

4

CORE/3520307.0002/160846913.3

Case 4:20-cv-00526-HFS   Document 19   Filed 08/05/20   Page 4 of 11

*McDermott* has no guidance to offer concerning Plaintiffs' as-applied challenges, nor do the cases from other circuits that *McDermott* relied upon. Unlike McDermott, whose arrest was found based on the factual findings of a jury to not have been motivated by protected speech, Plaintiffs' as-applied challenges to the ordinance rest on their allegation that the Failure-to-Obey Ordinances *are* applied to persons engaged in protected speech. (Complaint ¶¶ 3, 107.) That is a fact the court must take as true at this stage, *Erickson*, 551 U.S. at 94, and indeed a fact the Eighth Circuit took as true in its first examination of *McDermott*. *See* 123 Fed. App'x 241, 242–43. Furthermore, unlike the unusual situation in *McDermott* wherein a narcotics dog was "distracted from his duty" by McDermott's profanities and waving arms, 213 Fed. App'x at 501–02, no one here claims Plaintiffs distracted police officers such that they could not complete a search for evidence. (Nor would such a result be a requirement for their arrest and prosecution under the broad Failure-to-Obey Ordinances.) Indeed, Moody was arrested and charged under § 70-73 while sitting on the edge of a closed street. (Complaint ¶¶ 20, 23, 25, 33, 38.) Reading was arrested and charged under § 50-44(a) while standing in a closed street. (Complaint ¶¶ 50, 56, 65.) Cady was arrested and charged under § 70-73 after refusing to get on the ground while walking down an open sidewalk following a protest. (Complaint ¶¶ 88, 90, 94.) These facts do not come close to what happened in *McDermott*.

Even as to the facial-overbreadth claim, *McDermott* does not control the outcome of this motion for at least four reasons.

First, the narrow reading the *McDermott* court was able to give the Springfield ordinance (thereby rehabilitating it) is simply not available here, where there are plausible, well-pleaded allegations that the Failure-to-Obey Ordinances have already been applied in situations not involving physical obstruction or fighting words. (*See* Complaint ¶¶ 29, 32, 34, 50, 51, 55, 88,

102, 105.) The Eighth Circuit assumed a construction of the ordinance that Kansas City has already rejected in practice.

Second, the *McDermott* court did not have the benefit of the Supreme Court's guidance on overbreadth claims in *United States v. Stevens*, 559 U.S. 460 (2010). *See Willson v. City of Bel-Nor*, 924 F.3d 995, 1001 (8th Cir. 2019) (relying on *Stevens* for, among other things, the proposition that the court should "apply[] 'ordinary meaning' of words in statute instead of Government's strained reading"). After *Stevens* and *Willson*, a federal court may not go beyond the text of a challenged law to find a construction that passes constitutional muster. Here, like in *Stevens* and *Willson*, the challenged laws "appl[y] to a substantial amount of expressive conduct," including:

- Permitting an officer to approach a person on a sidewalk carrying a "Stop Police Brutality" sign and command them to put it down, then arresting them if they do not;

- Permitting an officer to order a protester out of a street even if they are not actually impeding any traffic whatsoever and then arresting them if they do not immediately comply;

- Permitting an officer to order a panhandler who is simply asking for monetary donations to put their sign down and stop panhandling and then arresting them if they do not comply.

Third, unlike *McDermott*, where the sole issue in the 2010 case is the facial-overbreadth claim, Plaintiffs here also bring a void-for-vagueness claim, which is discussed in Plaintiffs' Suggestions in Support of their Motion for Preliminary Injunction. Where a law impinges upon protected speech, as Plaintiffs have alleged the Failure-to-Obey Ordinances do both on their face and as applied to Plaintiffs, due-process concerns are heightened. See *Holder v. Humanitarian*

6

*Law Project*, 561 U.S. 1, 19 (2010). The *McDermott* court had no opportunity to consider whether the Springfield ordinance carried an undue risk of arbitrary enforcement (and viewpoint discrimination) by bestowing too much discretion upon the officer on the street. *See Kolender*, 461 U.S. at 357; *see also Cox v. Louisiana*, 379 U.S. 536 (1965). Because this claim was not at issue in *McDermott*, the Eighth Circuit did not decide it and *Kolender* and *Cox* remain controlling.

Finally, the *McDermott* court also never considered the proposition that the Springfield ordinance was subject to intermediate scrutiny as a law with an incidental effect on speech. And, there, that was proper: the jury found as a matter of **fact** that the plaintiff's arrest had not been motivated by her speech. There was, therefore, no evidence that the Springfield ordinance *did* affect speech. Here, however, the court must take as true, at this stage, Plaintiffs' well-pleaded allegations to this point. (Complaint ¶¶ 3, 102.) *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."); *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 756 (8th Cir. 2019) (commenting that "when speech and nonspeech elements are combined in the same course of conduct and the government seeks to neutrally regulate the non-speech element, intermediate scrutiny applies under the incidental-burden doctrine" (internal quotation marks omitted)). In other words, Plaintiffs here have demonstrated an additional reason that the ordinance violates the First Amendment that was not available or considered in *McDermott*.

For these reasons, the Failure-to-Obey ordinances are not, as the City contends, "parallel" to the laws and police actions at issue in *Weed* and *McDermott*. At this pleading stage, the complaint alleges facts sufficient to state a claim for violations of the Plaintiffs' rights under the First and Fourteenth Amendments. Defendant's Motion to Dismiss fails for these stated reasons.

7

## IV. Plaintiffs have standing because they are challenging the ordinances issued and enforced by the City, and enjoining the City from enforcing the ordinances will redress Plaintiffs' ongoing injuries.

To establish standing, Plaintiffs must show (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiffs have shown all three.

First, Plaintiffs have alleged, and those allegations must be taken as true at this stage, that they are fearful they will be arrested again if they participate in future protests and are therefore self-censoring. (Complaint ¶¶ 41, 67, 98.) In other words, their speech has been chilled. A First Amendment plaintiff "can establish standing by alleging it self-censored." *Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 794 (8th Cir. 2016). "A First Amendment plaintiff who faces a credible threat of future prosecution suffers from an ongoing injury resulting from the statute's *chilling effect* on his desire to exercise his First Amendment rights." *Id.*

Second, Plaintiffs have alleged a causal connection between their injury and the Failure-to-Obey Ordinances. The constitutional deprivation here—the arrests while engaged in nonviolent protests—*was enabled by these ordinances*. Municipal liability exists when the injury is caused by "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. N.Y.C. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). Plaintiffs have chosen not to participate in ongoing protests because of the Failure-to-Obey Ordinances, which afford unconstitutionally broad discretion to police officers to make arrests of nonviolent protesters exercising their constitutional rights. This self-censorship is a continuous, ongoing injury that is caused by the ordinances. The argument that it is the police and not "the City" that made the arrests completely misses the point. The very existence of the Failure-to-Obey Ordinances enabled the police to arrest Plaintiffs, who were engaged in nonviolent protests while sitting or standing on a closed street or walking on a sidewalk. The

8

CORE/3520307.0002/160846913.3

Case 4:20-cv-00526-HFS   Document 19   Filed 08/05/20   Page 8 of 11

injury—the arrests and threats of renewed arrests—were caused by the City's overbroad, vague ordinances that gave police the unfettered discretion to decide when they were tired of Plaintiffs' protest and then choose to make Plaintiffs' nonviolent speech into a criminal act.

Finally, the injury is redressable by the relief Plaintiffs have sought: a declaration that the ordinances are unconstitutional on their face and as applied to Plaintiffs and an injunction preventing their enforcement. (*See* Complaint, "Prayer for Relief.") That relief would deprive the police of the ability to use them to make arrests for otherwise lawful nonviolent protests.[3]

## V. Conclusion

The Court should deny the City's motion to dismiss. Plaintiffs have stated a claim for which relief can be granted because the Failure-to-Obey Ordinances are unconstitutionally vague and overbroad under applicable case law. The Plaintiffs have standing because they have suffered and continue to suffer from an injury caused by the City's ordinances that can be redressed by a favorable ruling.

---

[3] The City also argues that § 70-73, under which Plaintiffs Moody and Cady were arrested, is no longer in effect. The City does not bother to explain how the amendment moots the claims concerning § 70-73, and it is not apparent to Plaintiffs. But the City's contention that the amendment moots Moody and Cady's claims does undermine the City's argument that the challenged § 70-73 was not the cause of Moody's and Cady's injuries.

9

Respectfully submitted,

STINSON LLP

*/s/ John C. Aisenbrey*
John C. Aisenbrey, MO #31907
Bradley J. Yeretsky, MO #53845
Bryce Langford, MO #69188
Renee E. Henson, MO #71000
1201 Walnut Street, Suite 2900
Kansas City, Missouri 64106
Tel.: 816-842-8600 / 816-691-2360
Fax: 816-412-0997 / 816-691-3495
john.aisenbrey@stinson.com
brad.yeretsky@stinson.com
bryce.langford@stinson.com
renee.henson@stinson.com

and

Anthony E. Rothert, MO #44827
Jessie Steffan, MO # 64861
Omri E. Praiss, MO #41850
Kayla M. DeLoach, MO #72424
ACLU of Missouri Foundation
906 Olive Street, Ste. 1130
St. Louis, Missouri 63101
Phone: (314) 652-3114
arothert@aclu-mo.org
jsteffan@aclu-mo.org
opraiss@aclu-mo.org
kdeloach@aclu-mo.org

and

Gillian R. Wilcox, MO #61278
ACLU of Missouri Foundation
406 West 34th Street, Ste. 420
Kansas City, Missouri 64111
Phone: 816/470-9938
Fax: 314/652-3112
gwilcox@aclu-mo.org

*Attorneys for Plaintiffs*

10

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of August, 2020, I filed the foregoing through the Court's electronic filing system, which sent notice to all counsel of record.

>  */s/ John C. Aisenbrey*
> Attorney for Plaintiffs